# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

TRACY ENOS,                                          )
                                                     )
      Plaintiff,                                )
                                                     )
                                                     )
v.                                                   )   Case No. 4:21-CV-50-NAB
                                                     )
KILOLO KIJAKAZI,                                     )
Acting Commissioner of Social Security,[1]           )
                                                     )
                                                     )
      Defendant.                                )

## MEMORANDUM OPINION

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security (the "Commissioner") denying the application of Plaintiff Tracy Enos ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 9). Because I find the decision denying benefits was not supported by substantial evidence, I will reverse the Commissioner's denial of Plaintiff's application and remand the case for further proceedings.

## I.   PROCEDURAL BACKGROUND

On September 25, 2015, Plaintiff filed an application for DIB.  (Tr. 160-61).   On

---

[1]    Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

November 14, 2016, she filed an application for SSI. (Tr. 175-80).  In both applications, she alleged disability due to bipolar affective disorder, anxiety and panic attacks, major recurrent depression, and arthritis beginning on September 23, 2015, which she subsequently amended to April 19, 2015.  (Tr. 78, 219, 162-63).  After Plaintiff's applications were denied on initial consideration (Tr. 91-95), she requested a hearing from an Administrative Law Judge ("ALJ"). (Tr. 96-97). Plaintiff and counsel appeared for a video hearing on October 12, 2017.  (Tr. 42-77). The ALJ issued a decision denying Plaintiff's applications on January 26, 2018.  (Tr. 16-29).[2]  The Appeals Council denied plaintiff's request for review on August 7, 2018.  (Tr. 1-6). Plaintiff then filed a complaint in this Court in October 2018 and on December 30, 2019, the Honorable John M. Bodenhausen issued a Memorandum and Order and Judgment, reversing and remanding the case back to the Social Security Administration. (Tr. 590-616, 617). The Appeals Council then remanded the case back to the ALJ. (Tr. 618-21). Upon remand, the ALJ held another hearing on August 19, 2020. (Tr. 461-86). The ALJ issued a second unfavorable decision on October 6, 2020. (Tr. 430-46). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

## II.    FACTUAL BACKGROUND[3]

The undersigned adopts and incorporates the thorough discussion and summary of Plaintiff's disability and function reports, initial hearing testimony, and the medical evidence as detailed in Judge Bodenhausen's December 30, 2019 Memorandum and Order. (Tr. 591-603). This

---

[2]      The administrative transcript contains a second application for DIB (Tr. 681-82) and SSI (Tr. 683-87), which were filed in June 2019 with an alleged onset date of January 27, 2018 (one day after the ALJ's initial decision). Plaintiff alleges disability from the same four issues as alleged in her first applications. (Tr. 563, 576, 740). These applications were denied initially. (Tr. 625-29).

[3]      The administrative transcript contains duplicates of certain records; however, the undersigned does not cite to duplicates throughout this Memorandum and Order.

also includes the detailed review of the opinion evidence of record, which is the same opinion evidence presented in the case before the undersigned. (Tr. 603-07).[4]

At the August 19, 2020 hearing, Plaintiff testified that she does not "really have any more mania" but she has "been getting some depression." (Tr. 475). Plaintiff described it as getting "depressed in the winter, and [she] get[s] manic in the spring." (*Id.*). She tries to control it with medications, with some varying side effects from them. (*Id.*). She is still a patient of Dr. Guiffra, but only sees him every six months because she is "stable enough" but that she "could always call him, if [she] need[s] him." (Tr. 476). Although she could, Plaintiff does not call Dr. Guiffra instead of going into his office. (*Id.*). Plaintiff also testified that her mood control has not been too bad, and she has been acting somewhat stable. (Tr. 477). However, she believes this is because she has not had to work as work is what really triggers her into depression or a manic state. (Tr. 477-78).

As for her current symptoms, Plaintiff testified that it is "[j]ust her ability to concentrate" and she does not know if it is from her illness, or the medications, or something else. (Tr. 476). She indicated that she has a hard time finishing tasks for a long time. (*Id.*). Plaintiff stated that she does not think she would be able to concentrate well enough to remember. (Tr. 477). When asked about regulating her emotions, Plaintiff stated that she has a lot of anxiety, but she is not really depressed since meeting Dr. Guiffra in 2016. (Tr. 479). She testified it has been a "long recover" and she feels better now, but still experiences ups and downs as well as mood swings. (*Id.*).

### III.   STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). When determining whether an individual is

---

[4]     This does not include the Psychiatric Review Technique Form and Mental RFC Assessment completed by Steven Akeson, Psy.D. on September 3, 2019. (Tr. 562-74; 575-87).

disabled,[5] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations, determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations;[6] (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). Prior to Step Four, the Commissioner assesses the claimant's residual functional capacity ("RFC"), 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), which "the most [a claimant] can still do despite [his or her] limitations," 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

Through Step Four, the burden remains with the claimant to prove that he or she is disabled. *See Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2).

## IV.   THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ in this case found, at step one, that Plaintiff has not engaged in substantial gainful activity since September 23, 2015, the alleged onset date. (Tr. 433). At step two, the ALJ found that Plaintiff had the following severe impairments: bipolar affective disorder and alcohol abuse. (Tr. 433). The ALJ found Plaintiff had no severe physical impairment. (Tr. 435). At step three, the ALJ found that Plaintiff did not have an

---

[5]     Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). *Accord Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010).

[6]     Prior to Step Four, the Commissioner assesses the claimant's residual functional capacity ("RFC"), 20 C.F.R. § 404.1520(a)(4), which is "the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). *See also Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009).

impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 435).

The ALJ found that Plaintiff had the following RFC:

[Plaintiff can] perform a full range of work at all exertional levels but with the following non[-]exertional limitations: she is able to learn, remember and carry out simple, routine tasks. She is able to use reason and judgment to make simple, routine work-related decisions. She is able to work at an appropriate and consistent pace while performing simple, routine tasks. She is able to complete simple, routine tasks in a timely manner. She is able to ignore or avoid distractions while performing simple, routine tasks. She must have only gradual changes in job setting and duties. She is able to sustain an ordinary routine and regular attendance at work while performing simple, routine tasks. She is able to work a full day without needing more than the allotted number or length of rest periods during the day while performing simple, routine tasks. She must avoid contact with the general public, but can occasionally work close to or with coworkers and supervisors without interrupting or distracting them while performing simple, routine tasks. She must have only minimal tandem tasks.

(Tr. 436). Moving to step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (Tr. 444). At the fifth and final step of the sequential inquiry, after considering Plaintiff's age, education, work experience, and RFC, the ALJ relied on the testimony of the vocational expert and found that there are jobs that exist in numbers in the national economy that Plaintiff can perform, such as Night Cleaner, Laundry Worker I, and Garment Worker. (Tr. 444-45). The ALJ concluded that Plaintiff "has not been under a disability . . . from September 23, 2015, through the date of th[e] decision." (Tr. 446).

## V.   STANDARD OF REVIEW

The decision of the Commissioner must be affirmed if it "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quoting *Ford v. Astrue*, 58 F.3d 979, 981 (8th Cir. 2008)); *see also* 42 U.S.C. §§ 405(g); 1383(c)(3). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence'

to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942 (quotation marks omitted). *See also Biestek*, 139 S. Ct. at 1154 ("Substantial evidence . . . means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consol. Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

## VI.    DISCUSSION

Similar to the first appeal, Plaintiff again argues that the ALJ improperly weighed the medical opinion evidence.[7]   In particular, she asserts that the ALJ improperly discounted the

---

[7]      The ALJ's decision found that Plaintiff had no severe physical impairments and gave Steven Fishburn, M.D.'s opinion great weight. (Tr. 433-35). As Plaintiff does not make any arguments about her physical impairments or the treatment of Dr. Fishburn's opinion, the Court does not address either.

opinions of treating psychiatrist Dr. Giuffra. Responding, the Commissioner asserts that the ALJ's decision is supported by substantial evidence.

When evaluating opinion evidence, an ALJ is required to explain in the decision the weight given to any opinions from treating sources, non-treating sources, and non-examining sources. *See* 20 C.F.R. §§ 404.1527, 416.927. The regulations require that more weight be given to the opinions of treating physicians than other sources. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).[8] Similarly, more weight is given to examining sources than to non-examining sources. 20 C.F.R. §§ 404.1572(c)(1), 416.927(c)(1). According to the regulations, the opinions of treating medical sources are given more weight because they are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's impairments and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). "A treating physician's opinion should be granted controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." *Nowling v. Colvin*, 813 F.3d 1110, 1122 (8th Cir. 2016) (internal quotation and citations omitted). A treating physician's opinion, however, "does not automatically control or obviate the need to evaluate the record as a whole." *Id.* at 1122-23 (citation omitted). Rather, "an ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence or where a treating physician renders inconsistent opinions that undermine the

---

[8]     This continues to be true for Plaintiff's claim because it was filed before March 27, 2017. *Combs v. Berryhill*, 868 F.3d 704, 709 (8th Cir. 2017); 20 C.F.R. §§ 404.1527, 416.927 ("For claims filed . . . before March 27, 2017, the rules in this section apply.").

credibility of such opinions."  *Id.* (citation omitted).

Here, the ALJ's decision almost mirrors the initial decision from 2018 with the addition of the opinion of Dr. Akeson, a state agency psychiatrist. (Tr. 567-72; 580-85). Dr. Akeson, who rendered his two opinions (for DIB and SSI respectfully) on September 3, 2019, reviewed the available medical evidence and concluded the following:

> [Plaintiff]'s reporting appears consistent with evidence when she is having manic and/or depressive episodes. However, overall evidence does not indicate she routinely experiences these. She has not been admitted since 2015, reports she is w[ithout] panic attacks since 2000, and at the last few TP evals, her condition has largely been stable. This is consistent with the current CE MSE. Most reasonably with moderate issues consistent with prior ALJ denial. Evidence does not indicate what if any impact MJ[9] and alcohol use has on her functioning. DAA[10] is not material. See M[ental] RFC.

(Tr. 569, 582).

The ALJ gave Dr. Akeson's opinion "great weight" because Dr. Akeson is a medical expert who reviewed the record in its entirety at the time it was issued, and his opinion was consistent with the medical records that continued to show stability with treatment. (Tr. 443-44).

Upon review of the entire record, the undersigned finds that the ALJ's decision is not supported by substantial evidence. The ALJ did not address the issues discussed in Judge Bodenhausen's Memorandum and Order. The ALJ's decision is substantially the same as it relates to the medical opinion evidence, discussion, and findings. Specifically, almost every medical opinion mentions that the evidence does not indicate what, if any, impact Plaintiff's marijuana usage, alcohol consumption, and/or non-compliance has on her functioning. These include the medical opinions that the ALJ gave great weight too. (Tr. 569, 582) ("Evidence does not indicate what if any impact MJ and alcohol use has on her functioning."); (Tr. 84) (discussing Plaintiff's

---

[9]   MJ most likely stands for marijuana.

[10]   DAA is the abbreviation for Drug Addiction or Alcoholism.

stability when she is compliant with her medications). Further, the ALJ's only additional discussion and analysis for Dr. Guiffra's opinion is the following two sentences: "It would be expected that a person with the limitations described by Dr. Giuffra would require quite intensive treatment, including hospitalizations or intensive outpatient programs. However, by the time of the most recent hearing, [Plaintiff] testified she was only seeing him every six months, with no contact in between." (Tr. 443).

As Judge Bodenhausen stated, "federal courts have recognized a mentally ill person's noncompliance with psychiatric medications can be, and usually is, the 'result of [the] mental impairment [itself] and, therefore, neither willful nor without a justifiable excuse.'" *Pate-Fires v. Astrue*, 564 F.3d 935, 945 (8th Cir. 2009) (alteration in original, citations omitted). The ALJ neglected to take into account the role played by Plaintiff's mental illness and thus her purported noncompliance is not a valid basis for rejecting Dr. Giuffra's opinions. *See id.* at 943 (history of substance abuse and non-compliance with recommended medications and treatment "is an improper basis to reject a treating physician's opinion"). Because the ALJ did not address the implications of Plaintiff's marijuana use, alcohol consumption, or alleged non-compliance on her ability to function in the workplace, the undersigned will remand this case back to the Commissioner. Upon remand, the ALJ must specifically address if there are any implications on Plaintiff's functioning as it relates to these three issues, which may necessitate the need for an updated opinion from Plaintiff's psychiatrist, Dr. Guiffra.

## VII. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the relief requested in Plaintiff's Complaint and Brief in Support of Complaint is **GRANTED** in part and **DENIED** in part. (Docs. 1, 28).

**IT IS FURTHER ORDERED** that the decision of the Commissioner is **REVERSED** and **REMANDED** for further proceedings.

**IT IS FURTHER ORDERED** that a Judgment of Reversal and Remand will be filed contemporaneously with this Memorandum and Order remanding this case to the Commissioner of Social Security for further consideration pursuant to 42 U.S.C. § 405(g), sentence 4.

_____
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE

Dated this 8th day of November, 2022.